UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH D. ARLINE, JR., CDCR #T-13192,<br><br>Plaintiff,<br><br>v.<br><br>I. CORNEJO, et al.,<br><br>Defendants. | Case No.: 22cv284-DMS(LR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**<br><br>**[ECF No. 42]** |

On September 25, 2023, Plaintiff Keith D. Arline, Jr. ("Plaintiff"), an incarcerated person proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983, filed a "Motion Requesting Sanctions for Defendants['] Spoliation of Evidence" regarding video and document evidence that Plaintiff contends was improperly destroyed or tampered with during the pendency of this case. (See ECF No. 42 ("Mot. for Sanctions").) After the Court issued a briefing schedule, Defendants I. Cornejo, J. Garcia, D. Baeza, and S. Avalos ("Defendants") timely filed an opposition to Plaintiff's Motion. (See Defs.' Opp'n to Pl.'s Mot. for Sanctions, ECF No. 45 ("Opp'n").) Plaintiff subsequently filed a Reply to Defendants' Opposition, and the undersigned held a hearing on the motion on November 8, 2023. (See Pl.'s Reply, ECF No. 49 ("Reply"); Hr'g Tr., ECF No. 51.) For the reasons set forth below, Plaintiff's Motion for Sanctions is **DENIED** in its entirety.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a prisoner at Centinela State Prison ("Centinela"), filed a complaint pursuant to 42 U.S.C. § 1983 against four members of the prison's staff on March 2, 2022 alleging constitutional violations of his civil rights under the First and Eight Amendments.  (See Compl., ECF No. 1.)  In pertinent part, the Complaint alleges that Defendants Garcia and Baeza used excessive force against him when they placed him in handcuffs that were too tight during a March 18, 2021 transfer between two yards at Centinela, causing unnecessary injury and pain, and thereby violating his Eighth Amendment rights.  (See Compl. at 6-8.)[1]  After the transfer, the complaint explains that Plaintiff's injuries were recorded by LVN Garlington, a nurse on shift at Centinela who is not a named party in this action.  (See id. at 7.)

Through written requests for production, Plaintiff sought from Defendants: (1) video footage from four cameras in the walkway between B-Yard and C-Yard that was used to facilitate his transfer on March 18, 2021, which he contends would show contemporaneous evidence of his injuries, (see Mot. for Sanctions at 4), and (2) the original copy of the CDCR Form 7219 ("Form"), a contemporaneous medical injury report which was completed by LVN Garlington after his injuries occurred during the transfer.  (See Mot. for Sanctions at 4:13-18 (noting that the Form 7219 would have shown the "actu[al] injuries sustained [instead] of [those] now presented [by the] altered document.").)  Defendants did not provide the requested document or the video footage, explaining in an April 7, 2023 letter that there was no video footage of the incident because the cameras were inoperable during Plaintiff's transfer and that the original Form 7219 was "purged."  (See id. at 9.)  Instead, Defendants provided Plaintiff with what they contend is an identical copy of the requested original Form 7219 injury report during his deposition.  (See Opp'n at 11:1-2; C. Garlington Decl., ECF No. 45-1 ("Garlington

---

[1] Unless otherwise noted, the Court cites to pagination generated by the CM/ECF system, rather than the parties' internally generated pagination throughout this order.

Decl."), ¶ 2.)

Plaintiff contends that these responses are inadequate and demonstrate intentional spoliation of the video footage and the original Form 7219, requiring $100,000 in monetary sanctions to correct the prejudice that he will now suffer from "being provided with nothing in discovering critical information" that can be presented to a factfinder at trial in this matter. (Mot. for Sanctions 5:16-18 (internal quotations omitted).) In opposition, Defendants argue: (1) that Plaintiff's motion is untimely by over four months, (see Opp'n at 6-7); (2) that the video evidence never existed in the first place, meaning that spoliation did not occur by definition (see id. at 9-10); and (3) even if the original of the Form 7219 was destroyed, Plaintiff has not demonstrated how the content of the original as opposed to the copy that was provided to him would be relevant to the instant lawsuit, or how he would be prejudiced in presenting his case to a factfinder in its absence. (See id. at 10-13.) Defendants further contend that even if the Court were to determine that spoliation occurred, Plaintiff has not demonstrated how $100,000 in monetary sanctions would remedy the loss of the information that the instant motion seeks to address. (See id. at 13-14.) The Court addresses each of these arguments in turn below.

## II. LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1051–52 (S.D. Cal. 2015) (citing United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002)). A party seeking sanctions for spoliation first bears the burden of establishing that the opposing party actually destroyed relevant evidence. See Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 766 (9th Cir. 2015). A party engages in spoliation of evidence "as a matter of law only if [the party] had 'some notice that the documents were potentially relevant' to the litigation before [the evidence was] destroyed." Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (quoting Akiona v. United States,

938 F.2d 158, 161 (9th Cir. 1991); see also Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("This is an objective standard, asking whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation, not whether the party in fact reasonably foresaw litigation.") (internal quotations omitted). Conversely, "[a] party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of business." United States v. $ 40,955.00, 554 F.3d 752, 758 (9th Cir. 2009). Sanctions for spoliation should not be imposed if the spoliated evidence does not have sufficient relevance. See Ryan, 786 F.3d at 766. Further, the absence of prejudice to the party seeking sanctions is a sufficient basis to deny sanctions for spoliation. See id. The availability of other sources or types of evidence, in addition to the despoiled evidence, may be considered by a court in determining if sanctions are warranted. See Medical Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 824-25 (9th Cir. 2002).

Federal Rule of Civil Procedure 37(e) governs the spoliation of electronically stored information and provides:

> If electronically stored information should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced though additional discovery, the court . . . upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

Fed. R. Civ. P. 37(e)(1). Intentional spoliation of ESI gives rise to harsher sanctions under Rule 37(e)(2). See Fed. R. Civ. P. 37(e)(2) (noting that certain sanctions are available "only upon a finding that the party acted with the intent to deprive another party of the information's use").

A court may also punish "discovery violations" pursuant to its inherent power to regulate litigants and counsel who participate in litigation. See McGee v. N. Am.

Bancard, LLC, Case No.: 17-cv-00586-AJB-KSC, 2021 WL 2577159, at *5 (S.D. Cal. June 23, 2021) (citing Jackson v. Microsoft Corp., 211 F.R.D. 423, 430 (W.D. Wash. 2002). Among the sanctions available to a court are default or dismissal of claims or defenses, preclusion of evidence, an adverse inference instruction, and monetary sanctions. See Leon v. IDX Sys., 464 F.3d 951, 958-59 (9th Cir. 2006); In re Napster, Inc. Copyright Litig., 462 F. Supp .2d 1060, 1078 (N.D. Cal. 2006). District courts in this Circuit are split as to whether Rule 37 provides the exclusive remedy for spoliation of ESI, or whether the Court may also impose such sanctions pursuant to its inherent authority. See, e.g., Aramark Mgmt., LLC v. Borgquist, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *4 (C.D. Cal. Jan. 27, 2021) (noting split and collecting cases). Regardless of whether the Court uses the Federal Rules or its inherent power, however, the party moving for discovery sanctions "ha[s] the burden of establishing spoliation," Harfouche v. Wehbe, 705 F. App'x 589, 590 (9th Cir. 2017) (quoting Ryan, 786 F.3d at 766) (internal quotations omitted), and "the relevant standard of proof for spoliation sanctions is a preponderance of the evidence." Fast v. GoDaddy.com LLC, 340 F.R.D. 326, 335 (D. Ariz. 2022).

A trial court has significant discretion in selecting which sanctions are appropriate once spoliation is found, but in exercising that discretion, the Court should consider "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" Al Otro Lado, Inc. v. Wolf, No. Case No.: 3:17-cv-02366-BAS-KSC, 2021 WL 631789, at *2 (S.D. Cal. Feb. 18, 2021) (quoting Rockman Co. (USA), Inc. v. Nong Shim Co., Ltd., 229 F. Supp. 3d 1109, 1121 (N.D. Cal. 2017)), report and recommendation adopted sub nom, Al Otro Lado, Inc. v. Mayorkas, Case No. 19-cv-01344-BAS-MSB, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021). Sanctions should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful

destruction of evidence by the opposing party." Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)) (internal quotations omitted).

### III. DISCUSSION

#### A. Timeliness and Failure to Comply with Chambers Rules

Defendants first argue that Plaintiff's sanctions motion should be denied because it is untimely and fails to comply with the Court's rules regarding discovery disputes. (See Opp'n at 2-3.) Citing to the undersigned's civil chambers rules, which require discovery disputes to be brought to the Court's attention through a request for an informal discovery dispute conference within forty-five days of the event giving rise to the dispute, Defendants point out that that Plaintiff's motion was filed over one hundred days after the April 7, 2023 letter to Plaintiff reiterating their response to his requests for the disputed video footage and original 7219 Form—the latest possible event giving rise to the instant sanctions motion. (See id. at 2 (citing Hon. Lupe Rodriguez, Jr. Civ. Chambers R. § IV).) In response, Plaintiff notes that any delay in filing this motion is "due to prison life" and argues that it was nevertheless submitted after "exercising due diligence." (See Mot. for Sanctions at 4.)

The undersigned's civil chambers rules require that the parties in any action meet and confer regarding all disputed issues before contacting the Court about a discovery dispute. See Hon. Lupe Rodriguez, Jr. Civ. Chambers R. § IV(A). If the dispute is not resolved during the meet and confer process, the parties must contact the Court and request an informal discovery dispute conference within forty-five days of the event giving rise to the discovery dispute. See id. § IV.B.1, IV.C. For written discovery, the event giving rise to the dispute is the date of service of the response. See id. § IV.B.1.

Plaintiff's sanctions motion is not the first time that the Court was alerted to his dissatisfaction with Defendants' discovery responses regarding the disputed material. On August 29, 2023, Plaintiff left a voicemail with the undersigned's chambers explaining that he had handed the sanctions motion to prison staff for filing with the Court on

August 15, 2023, but was unable to receive any confirmation of its filing. (See ECF No. 37 at 3 (noting that Plaintiff was able to leave a voicemail regarding the motion with chambers after three previous attempts to do so).) A letter explaining these circumstances was filed with the Court on September 1, 2023 and did not appear on the Court's docket until September 6, 2023. (See id. at 1-3.) At the mandatory settlement conference ("MSC") in this matter on September 13, 2023, Plaintiff again explained that he was not satisfied with Defendants' responses regarding the video footage and the original Form 7219. The undersigned referred Plaintiff to the Court's civil chambers rules and explained that discovery motions cannot be filed without first complying their informal resolution procedures. The instant motion was not filed on the docket until September 25, 2023, and Plaintiff did not comply with the meet and confer requirement or the informal discovery conference process before its filing. (See ECF No. 42; Opp'n at 2.)

Given the circumstances outlined above, even if the Court were to assume: (1) that the dispute giving rise to the instant motion occurred on April 7, 2023—the second time that Defendants responded to Plaintiff's requests for production about the video footage and the original Form 7219,[2] (2) that Plaintiff constructively filed the instant motion on August 15, 2023—the earliest date that Plaintiff alerted the Court to his intention to seek sanctions for spoliation of evidence, and (3) that the informal resolution procedures outlined in the undersigned's civil chambers rules should be waived in this situation, Plaintiff's motion would still be untimely by over *eighty days*. Although this would be a sufficient basis to deny the instant motion alone, the Court will nevertheless reach the merits of the sanctions motion below. Plaintiff is cautioned that the undersigned's civil chambers rules are *rules*, not guidelines or suggestions, and that he must make every

---

[2] The Court sought clarification about the latest date that Defendants could have communicated with Plaintiff about the disputed material at the hearing on the sanctions motion. Plaintiff confirmed that the last time he received any communication about those specific requests for production was in the April 7, 2023 letter. (See Hr'g Tr. at 6.)

effort to comply with their requirements in the future.

**B.      Video Footage of the Yard Transfer**

Plaintiff's requests for production relevant to his yard transfer sought "video footage from the four(4) surveillance camera[s]" that would have recorded Defendants placing him in handcuffs that were too tight before his transfer, as well as his expressions of pain and discomfort during the walk between the two yards.  (Mot. for Sanctions at 4-5.)  In the April 7, 2023 letter responding to these requests, Defendants' counsel explained that she would not be providing the requested footage to Plaintiff because "there is no video[.]"  (Id. at 9.)  Plaintiff's sanctions motion contends that this response demonstrates that Defendants intentionally failed to preserve or destroyed the video footage of the incident.  (See id. at 6 "it['s] odd for prison officials . . . to not have surveillance cameras working which is a total of four(4) that is positioned to capture the incident in question.").)

In opposition, Defendants explain that the video footage in question never existed because the cameras in the transfer walkway were not recording at the time of the incident.  (See Opp'n at 9-10.)  In support of this contention, Defendants attach the declaration of N. Telles, the litigation coordinator at Centinela, which notes that that after "a search was conducted . . . for video surveillance and audio recording of the incident[,]" she "was informed that no such video or audio exists, . . . [and] that [the relevant] cameras have not been operating for several years, including during the incident alleged in Plaintiff's lawsuit."  (N. Telles Decl., ECF No. 45-2 ("Telles Decl."), ¶ 2-4.)  Defendants explain that the lack of recording is a longstanding problem "caused by technical issues dealing with software and equipment compatibility," and that many cameras at Centinela, although installed throughout the facility, have been inoperable or unable to record for years.  (See Opp'n at 9-10.)  Plaintiff's belief that the footage should exist—as Defendants argue—is insufficient to establish that the recording ever existed in the first place, meaning that spoliation did not occur by definition.  (See id.)

Plaintiff has not pointed to sufficient grounds to meet his burden of establishing that the video footage ever existed in the first place, let alone that it has been lost or destroyed as necessary to obtain sanctions under Rule 37(e).  As another judge in this district has pointed out, the mere contention that evidence must exist is insufficient to establish that it *did* exist and was subsequently destroyed, especially when evidence presented by the opposing party heavily refutes such assertions.  See Ramirez v. Zimmerman, Case No.: 17-cv-1230-BAS-AHG, 2020 WL 905603, at *6 (S.D. Cal. Feb. 25, 2020) (quoting U.S. Legal Support, Inc. v. Hofioni, No. 2:13-CV-1770 LKK AC, 2014 WL 172336, at *4 (E.D. Cal. Jan. 15, 2014)).  Apart from pure speculation that the video footage of the incident should exist in his motion papers, Plaintiff has not presented any evidence to refute or give the Court any pause regarding Defendant's contentions that the cameras were not operational during Plaintiff's yard transfer.  (See Mot. for Sanctions at 6:2-3 ("it's odd for prison officials to . . . not have surveillance cameras working.").) When asked about this deficiency during the hearing, although Plaintiff was able to provide a general description of the control tower that monitors the walkway between B-Yard and C-Yard, and asserted that officers in the tower would presumably monitor any video of the incident, he was likewise unable to refute Defendants' contention that the cameras were not working during his transfer.  (See Hr'g Tr. at 7:2-16.)  Because Plaintiff has not presented any evidence to suggest that the video footage existed in the first place, sanctioning Defendants for its spoliation would not be appropriate.

Moreover, as will be explained in further detail below with respect to the non-electronic evidence, the Court finds it helpful to point out a more fundamental problem with Plaintiff's contention that the Court should sanction Defendants in this matter for spoliation of the video footage.  Even if the Court were to assume that the video footage did exist at one point and was subsequently destroyed or deleted, Plaintiff has not demonstrated that the named defendants in this matter had anything to do with its unavailability for use as evidence in the instant litigation.  See Jones v. McElroy, No. 2:13–cv–1375 GEB CKD P, 2016 WL 8730730, at *6-7 (E.D. Cal. Feb. 12, 2016)

1   ("Here, plaintiff has not proven the elements for spoliation sanctions against any
2   defendant."). As sanctions need to be narrowly tailored to correct a particular party's
3   improper destruction of evidence during litigation, the Court declines to impute any
4   potential wrongdoing on the part of unnamed actors that are not a part of this lawsuit to
5   the named defendants in this action. Because Plaintiff has not demonstrated that the
6   disputed video footage of the incident existed in the first place, or that the named
7   defendants in this case had anything to with its unavailability even if it did exist, the
8   Court **DENIES** Plaintiff's sanctions motion as to the video evidence.

9   **C.   The Original Form 7219 Incident Report**

10   Plaintiff's assertion that the Court should impose sanctions against Defendants for
11   spoliation of the original Form 7219 presents a closer question. In addition to requesting
12   video footage from the cameras in the walkway between B-Yard and C-Yard during his
13   transfer, Plaintiff requested that Defendants produce an original version of Form 7219,
14   which he contends "would [have] shown [actual] injuries sustained [instead] of the now
15   presented altered document." (Mot. for Sanctions at 4:16-18.) Citing to Bull v. United
16   Parcel Serv., Inc., 665 F.3d 68 (3d. Cir. 2012), Plaintiff argues that the Court should
17   conclude from Defendants' production of a *copy* of the Form 7219, rather than the
18   original, that the content of the original form would have been harmful to their case,
19   meriting sanctions for its destruction. (See Mot. for Sanctions at 2; 5.) Additionally,
20   Plaintiff objects to the authenticity of the Form 7219 copy, contending that the original is
21   "the only proof available" to demonstrate the injuries that he sustained during the
22   incident and that Defendants are conspiring with each other to prevent the presentation of
23   his evidence to a factfinder in this case. (See id. at 6; Reply at 2.)

24   Although Defendants do not contest that the original Form 7219 was destroyed,
25   they urge the Court to conclude that sanctions are inappropriate here for several reasons.
26   Noting that Plaintiff was shown a copy of the Form 7219 at his deposition and that
27   Defendants turned over another copy during discovery, Defendants contend that
28   Plaintiff's spoliation motion does not demonstrate in any meaningful fashion how the

1  content of the original was different than the copy that was produced, making sanctions
2  for spoliation inappropriate.  (See Opp'n at 10-12.)  Pointing to a declaration by LVN
3  Garlington, the nurse who completed the original Form 7219 after the incident, which
4  explains that the copy produced during discovery is an accurate representation of the
5  form she filled out on the date of the incident, Defendants argue that Plaintiff has not
6  demonstrated how the content of the original Form 7219 as opposed to the copy Plaintiff
7  has been given is relevant, or how he would be prejudiced in presenting his claims in the
8  absence of the original Form 7219.  (See id. at 12.)  Finally, Defendants acknowledge
9  that Plaintiff may object to the copy's authenticity at trial or in a motion for summary
10 judgment, but contend that such an objection does not merit sanctions for the original
11 Form 7219's destruction.  (See id. at 12-13.)

12        Courts within the Ninth Circuit generally agree that a party seeking sanctions for
13 spoliation of non-ESI evidence has the burden of establishing the following elements by a
14 preponderance of the evidence: "(1) that the party having control over the evidence had
15 an obligation to preserve it at the time it was destroyed; (2) that the records were
16 destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the
17 party's claim or defense such that a reasonable trier of fact could find that it would
18 support that claim or defense."  Ghorbanian v. Guardian Life Ins. Co. of Am., No. C14-
19 1396, 2017 WL 1543140, at *2 (W.D. Wash. Apr. 28, 2017) (quoting Apple Inc., 888 F.
20 Supp. 2d at 989) (internal quotations omitted); see also Bungie, Inc. v. AimJunkies.com,
21 C21-0811 TSZ, 2023 WL 7184427, at *4 (W.D. Wash. Nov. 1, 2023) (noting the relevant
22 standard for evaluating sanctions motions related to non-ESI evidence).  The Court will
23 address each of these factors in turn.

24        **1.    Duty to preserve the original Form 7219**
25        Courts have generally recognized a party's duty to preserve evidence when the
26 party knows or reasonably should know the evidence is relevant and when prejudice to an
27 opposing party is foreseeable if it is destroyed.  See Lewis v. Ryan, 261 F.R.D. 513, 518
28 (S.D. Cal. 2009).  Destruction of evidence qualifies as willful spoliation if the party has

"'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. (quoting Leon, 464 F.3d at 959).

Neither Plaintiff nor Defendants can state with any certainty when the original copy of the Form 7219 was destroyed. Plaintiff's motion argues that Defendants had a duty to preserve the original Form 7219 before this lawsuit was filed because LVN Garlington recorded his injuries on March 18, 2021 (the day of the incident), and Plaintiff filed several subsequent requests to view its content with prison officials—although when these requests were filed and how they were processed is less than clear. (See Mot. for Sanctions at 6; Hr'g Tr. at 27:16-21.) Defendants' opposition does not refute that they had a duty to preserve the original Form 7219 between the date of the incident and Plaintiff's requests for production. (See generally Opp'n at 10-13.) When the undersigned asked clarifying questions during the hearing about the retention policy of a Form 7219 used to record incidents such as the one Plaintiff was involved in at Centinela or the California Department of Corrections and Rehabilitation ("CDCR") in general,[3] defense counsel likewise could not definitively answer whether the original version of the Form 7219 was required to be preserved under the appropriate retention policies. (See

---

[3] Defense counsel explained that a Form 7219 is typically attached to an incident report after an injury occurs—which in turn have different retention policies depending on the type of incident that the inmate is involved in. (See Hr'g Tr. at 24-25.) For instance, if an incident is classified as a "use of force" by the official filling out the form, CDCR's retention policy requires that the incident report be kept for longer than if the incident is not classified as a use of force. (See id. at 25:9-14.) Although this could provide one explanation as to why the original Form 7219 was not retained, the Court is unconvinced that such an explanation is sufficient to demonstrate that the duty to preserve it did not exist. The change in classification of the incident on the original version of the form as opposed to the copy that was provided to Plaintiff during discovery is one of the main areas of contention between the parties in this motion. (Compare Mot. for Sanctions at 5:8-15 (contending that officers intentionally tried to alter the form to remove references to excessive force), with Garlington Decl. ¶ 3 (explaining why the "use of force" box was originally checked, then altered after the incident).) Moreover, defense counsel could not definitively explain whether the destruction of the original version of the form complied with CDCR's retention policy, only noting that the physical copy of the original was destroyed due to difficulties with retaining physical copies of forms filled out in the program office. (See Hr'g Tr. at 25:15-22.)

Hr'g Tr. at 26:7-20.)

This lack of testimony that the form was destroyed pursuant to normal business practices would normally lead the Court to conclude that it is more likely than not that Defendants had a duty to preserve the original Form 7219 at the time that it was destroyed and failed to do so. See Singleton v. Kernan, Case No.: 3:16-cv-2462-BAS-NLS, 2018 WL 5761688, at *4 (S.D. Cal. Nov. 1, 2018) (concluding under a preponderance of the evidence that the defendants had a duty to preserve relevant records when they could not refute the plaintiff's contention that they should have been preserved at the time the lawsuit was filed and could not explain whether CDCR policy required their retention). As Defendants point out, however, Plaintiff makes no showing that any of the named parties participated in, directed, or had anything to do with the destruction of the original Form 7219. (See Opp'n at 11:25-27; Garlington Decl. ¶ 4; see also Section III.B., supra (noting that Plaintiff did not make a proper showing that any of the named parties in this lawsuit were involved in the absence of the video evidence).) Indeed, Plaintiff confirmed at the hearing that the original Form 7219 was altered "outside of [his] presence" by LVN Garlington at the direction of an "unknown sergeant," neither of whom are parties to this lawsuit.[4] (Hr'g Tr. at 19:12-15.) Accordingly, the Court cannot conclude that Defendants in this case or their counsel had an obligation to preserve the original version of the Form 7219.

### 2.  Culpable state of mind

The "culpable state of mind" factor for the purposes of spoliation does not require the Court to find that a party acted in bad faith. See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). Rather, the Court need only find that a party "'conscious[ly] disregard[ed]'" its preservation obligations. See Al Otro Lado, Inc., 2021 WL 631789, at *5 (citing Apple Inc., 888 F. Supp. 2d at 998). The required culpable state of mind

---

[4] The Court notes that the only defendants named in his Eighth Amendment excessive force claim at issue in the instant motion are D. Baeza and J. Garcia. See Section I, supra.

includes negligence. See Lewis, 261 F.R.D. at 521; see also Cottle-Banks v. Cox Commc'ns, Inc., No. 10cv2133–GPC (WVG), 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013).

Plaintiff contends in a conclusory fashion that the destruction of the original Form 7219 was undertaken in bad faith, but offers no evidence to support these statements. As there is no evidence that the original version of the Form 7219 was destroyed with the "intent to deprive [plaintiff] of relevant evidence," the Court concludes that Defendants did not act in bad faith. See Al Otro Lado, Inc., 2021 WL 631789, at * 5 (quoting Coburn v. PN II, Inc., Case No. 2:07–cv–00662–KJD–LRL, 2010 WL 3895764, at *7 (D. Nev. Sept. 30, 2010) (internal quotations omitted)). The absence of bad faith, however, does not end the culpable state of mind inquiry. Defendants could nevertheless have negligently destroyed the original version of the Form 7219, satisfying this factor of the spoliation test within the Ninth Circuit.

The Court's analysis of whether the original Form 7219 was destroyed negligently largely mirrors the reasoning of Section III.C.1., supra. Defendants implicitly concede that the original version of the form was not destroyed pursuant to normal business practices in accordance with CDCR or Centinela's document retention policies, and do not refute that the documents were negligently destroyed. (See generally Opp'n at 11:7-11.) These circumstances would normally be sufficient for the Court to conclude that the original Form 7219 was destroyed with a culpable state of mind. See Singleton, 2018 WL 5761688, at *4 (citing Cottle-Banks, 2013 WL 224433, at *14) (concluding that documents not kept in the normal course of business according to CDCR retention policies were negligently destroyed, meeting the culpable mind standard). Once again, however, Plaintiff has failed to demonstrate that the named defendants in this action had anything to do with the original Form 7219's destruction. Apart from general allegations that Defendants Garcia and Baeza conspired with other prison officials to alter and then destroy the requested form before producing its copy during discovery, (see Mot. for Sanctions at 5:11-15), Plaintiff has not demonstrated that any parties to this lawsuit or

their counsel were involved in the document's destruction.  Because sanctions should be narrowly tailored to address the destruction of evidence by a particular party in the litigation, see Reinsdorf, 296 F.R.D. at 626, the Court cannot conclude that Defendants Garcia or Baeza destroyed them with a culpable state of mind.

### 3. Relevance

The final prong of the Court's sanctions analysis considers whether Plaintiff has demonstrated that the destroyed evidence was "relevant" to his claims "'such that a reasonable trier of fact could find that it would support th[ose] claim[.]'" Apple, Inc., 888 F. Supp. 2d at 989 (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)).  In the Ninth Circuit, courts generally agree that relevance for spoliation purposes is "a two-pronged finding of relevance and prejudice because for the court to issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence." Reinsdorf, 296 F.R.D. at 627 (internal quotations omitted).

Defendants assert that it is "unclear what the relevance of the original 7219 versus the copy of the 7219 form is in Plaintiff's motion," reasoning that Plaintiff has not "provide[d] any details as to what he claims is different in the original [Form 7219] versus the copy[.]" (See Opp'n at 11:19-20; 12:4-5.)  The Court is unconvinced by these arguments.  The relevance standard "is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Compass Bank, 104 F. Supp. 3d at 1051 (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  Plaintiff's assertions about the content of the original copy of the Form 7219 in contrast to the copy that was provided to him easily satisfy that standard—he contends that the original, contemporaneous form contained more accurate information about the injuries he sustained during the incident, as opposed to the one that was given to him during discovery.  (See Mot. for Sanctions at 4:16-18; Hr'g Tr. at 14:17-16:18 (noting that LVN Garlington documented on the original form that Plaintiff

1  suffered cuts and blisters, and was treated with Band-Aids, alcohol pads, and iodine, as
2  well as that such information was not included on the copy of the form provided during
3  discovery).)  To require Plaintiff to provide additional extrinsic evidence as to what was
4  on the destroyed original of the Form 7219—as Defendants suggest that the Court should
5  do here—would not be realistic.  See, e.g., Al Otro Lado, Inc., 2021 WL 631789, at *6
6  (citing id. at 1054) (reasoning that a requirement of anything more than a basic showing
7  of the content of the destroyed evidence would be an "impossible task" because there is
8  no way to know definitively what the destroyed evidence would have revealed).  The
9  content of the original Form 7219, as opposed to the copy, is relevant to Plaintiff's claims
10 against Defendants Garcia and Baeza.

11     Although the content of the original Form 7219 is relevant to Plaintiff's Eighth
12 Amendment excessive force claims, Plaintiff nevertheless fails to demonstrate how he
13 has been prejudiced by the lack of this information such that its absence would impair his
14 "ability to go to trial or threaten[] to interfere with the rightful decision of the case."
15 Leon, 464 F.3d at 959 (internal quotations omitted).  At the outset, the Court
16 acknowledges that had the original Form 7219 been available, Plaintiff may have been
17 able to present additional evidence to a factfinder about the extent of his injuries and how
18 those injuries were treated.  (Cf. Hr'g Tr. at 14-15.)  Assuming that these notes were in
19 fact included on the original Form 7219, there does not appear to be any evidence
20 available to Plaintiff as a substitute for a more detailed, contemporaneous documentation
21 of the extent of his injuries and how they were treated.  (See Mot. for Sanctions at 5:2-8.)

22     Nevertheless, the Court is not convinced by Plaintiff's argument that the
23 unavailability of such evidence provides him with "nothing in discovering critical
24 information."  (See id. at 5:16-18.)  The copy of the form still provides a great deal of
25 information about the incident—including when it occurred, what types of injuries were
26 sustained, who treated Plaintiff, and that the injury was inflicted on Plaintiff's wrists.
27 (See Garlington Decl., Ex. A.)  Plaintiff vigorously opposes LVN Garlington's statement
28 in her declaration that the copy of the Form 7219 is an "identical copy to the original

1  form that [she] completed after the incident," (id. ¶ 2), citing to Bull for the proposition
2  that a party's failure to produce originals can constitute spoliation.  (See Mot. for
3  Sanctions at 2:22-3:1 (citing 665 F.3d at 73).)  While that statement is correct, it is only a
4  partial reading of the Bull Court's analysis.  The Third Circuit in that case explained that
5  "prejudice for the purpose of [a sanctions] analysis does not mean irremediable harm, the
6  burden imposed by impeding a party's ability to prepare effectively a full and complete
7  trial strategy is sufficiently prejudicial," and reasoned that the district court's
8  characterization of the prejudice suffered by the moving party as "irreparable" below was
9  "dubious" because it had not undertaken an analysis of the probative value of the original
10 documents compared to copies.   Bull, 665 F.3d at 80-81 (internal quotations omitted).
11 This part of the Bull decision is informative for the purposes of the Court's analysis of
12 the instant motion and can easily be correlated to caselaw within the Ninth Circuit which
13 explains that the availability of other evidence to substantiate a party's claims can reduce
14 the prejudice to the moving party such that sanctions are inappropriate.  See, e.g.,
15 Reinsdorf, 296 F.R.D. at 631 (finding no prejudice where the defendant "produced other . .
16 . . evidence" supporting the plaintiff's claims); Lofton v. Verizon Wireless (VAW) LLC,
17 308 F.R.D. 276, 308 (N.D. Cal. 2015) (explaining that courts can decline to impose
18 sanctions where "other evidence exists to prove the same information"); Al Otro Lado,
19 Inc., 2021 WL 631789, at *7 (concluding that the moving party had sufficient
20 information from other discovery in the case such that the missing information was not
21 the only source of evidence to support its claims).  The notes that Plaintiff argues are
22 missing are not the only source of evidence in support of his claims.  (See Hr'g Tr. at 20-
23 21.)

24      Moreover, nothing in the instant sanctions analysis prevents Plaintiff from
25 presenting his objection to the copy's authenticity in contrast to the original Form 7219 to
26 a factfinder at the appropriate time in this litigation.  (See Mot. for Sanctions at 6:6-15.)
27 Although discovery is now closed, Plaintiff may choose to question the copy's
28 authenticity as an exhibit during trial or cross-examine LVN Garlington under penalty of

perjury as to whether the information on the copy is the same as what was recorded on the original. The absence of this information in the copy of the Form 7219, however, is insufficient for the Court to conclude that prejudice occurred such that Plaintiff has been hindered in his ability to present his case. See Leon, 464 F.2d at 959. Indeed, at the hearing, defense counsel offered to stipulate to information Plaintiff believes is missing from the copy—namely that Plaintiff's injuries were sufficiently severe to require treatment with bandages, gauze, and antiseptic. (See Hr'g Tr. at 23:12-25.) Presentation of this missing information, as well as the circumstances surrounding its absence to a factfinder may very well bear upon Defendants' credibility at trial, but that determination is separate from the Court's inquiry as to whether the missing information has prejudiced Plaintiff such that sanctions should be imposed. As such, Plaintiff has not met his burden to demonstrate that the relevance prong of the Apple test has been satisfied in this case. See 888 F. Supp. 2d at 989.

### 4.  Conclusion

Although neither party disputes that the original Form 7219 was destroyed, the Court concludes that Plaintiff has not met his burden of demonstrating by a preponderance of the evidence that spoliation occurred such that sanctions should be imposed against the named defendants in this case. See McGhee v. N. Am. Bancard, LLC, Case No.: 17-cv-00586-AJB-KSC, 2021 WL 2577159, at *6 (S.D. Cal. June 23, 2021) (declining to consider even lesser sanctions when the required elements of spoliation were not met). Plaintiff has not demonstrated that Defendants Garcia and Baeza, or their counsel, had anything to do with the destruction of the original Form 7219, or that its absence would prejudice him significantly in presenting his Eighth Amendment claims to a factfinder in this matter. Even if some prejudice would result from Plaintiff's inability to present the content of the original Form 7219 at trial, the requested monetary sanctions of $100,000 do not correspond in any meaningful fashion to the "willfulness of the destructive act and the prejudice suffered" by Plaintiff in this case. In re Napster, 462 F. Supp. 2d at 1067 (internal quotations omitted).

## IV.   CONCLUSION

Plaintiff's Motion for Sanctions fails to: (1) establish the existence of the requested video evidence such that sanctions should be imposed for its destruction; and (2) establish that spoliation of the original Form 7219 occurred because he does not present sufficient evidence that the named defendants had anything to do with its destruction, or that its absence would severely prejudice Plaintiff in the presentation of his claims to a factfinder.  Plaintiff's motion (ECF No. 42) will accordingly be **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated:  November 28, 2023

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge